## THE PEOPLE EX REL. J. H. FLACK, APPELLANT, *v.* THE BOARD OF COUNTY COMMISSIONERS OF WASHOE COUNTY, RESPONDENT.

Two-thirds of the property tax of Washoe County must be placed in the General Fund. The law also provides how this fund shall be paid out. The Commissioners have no authority to make a change in this respect.

Two-thirds of the poll tax must also be paid into the General Fund; there is no authority for paying it all into the Indigent Sick Fund.

The law having appropriated one-sixth of the revenue, *or so much thereof as may be necessary*, to the Indigent Sick Fund, and made a similar appropriation to a Contingent Fund. Query: If one-sixth of the county revenue should be more than sufficient for either of these funds, what is to be done with the surplus? Intimated that as to such surplus the Commissioners have a discretion to use it for any legitimate county purpose.

APPEAL from the District Court of the Fourth Judicial District, State of Nevada, Washoe County, Hon. C. C. GOODWIN presiding.

The facts are stated in the opinion.

*Wallace & Flack*, for Appellant, referred to the different sections of the statute bearing on the controversy, and contended the Commissioners could only exercise that authority specially conferred on them, and the Legislature gave them no authority to create new funds, or to divert the county revenue from those purposes to which by law it was devoted.

*Thos. Fitch, Esq.*, for Respondent.

Opinion of the Court by Justice BEATTY, Justice BROSNAN concurring.

Chief Justice LEWIS did not participate in the hearing or determination of this case.

This is a petition praying for the issuance of a writ of mandamus against the Board of County Commissioners of Washoe County to compel them to make an order for the distribution of the county revenue according to the provisions of a law passed at the last session of the Legislature. The Court below refused to issue the writ and gave judgment for costs against the relator, who appeals to this Court.

The law referred to provides as follows: "The Boards of County Commissioners in the several counties of this State shall apportion all the moneys coming into the county treasury, or so much thereof as is not by law set aside into special funds, as follows: Two-thirds shall go into the General County Fund; one-sixth, or so much thereof as may be necessary, shall go into the Indigent Sick Fund, and one-sixth, or so much thereof as may be necessary, shall go into the Contingent Fund, to defray the contingent expenses of the county."

The Board of Commissioners met in Washoe on the 3d of April, 1865, and made the following order:

"*Ordered,* That a tax of one dollar and fifty cents on each one hundred dollars of all the property in the County of Washoe, not exempt from taxation, be, and the same is hereby levied for county purposes. Said last mentioned tax shall be, and the same is hereby apportioned as follows: Forty cents on each one hundred dollars taxed shall be placed by the County Treasurer in the General Fund, heretofore created, to be applied to the payment of indebtedness heretofore contracted on that fund, which shall hereafter be known as the Reduction Fund; sixty cents on each one hundred dollars taxed shall be placed by the County Treasurer in the General Fund, to be applied to the payment of any indebtedness which may be hereafter contracted by the county on the General Fund; forty cents on each one hundred dollars taxed shall be placed by the County Treasurer in the Contingent Fund, to be applied to the payment of any indebtedness which may be hereafter contracted by the county on that fund; ten cents on each one hundred dollars taxed shall be placed by the County Treasurer in the Indigent Sick Fund, to be applied to the payment of any future indebtedness which may be contracted by the county on that fund.

" All moneys arising from the sale of licenses under the Act of the Legislature of the State of Nevada, entitled ' An Act to provide for the support of the Government of the State of Nevada,' shall be placed by the County Treasurer in the General Fund, and shall be applied to the payment of any future indebtedness contracted by the county on that fund.

" All moneys arising from the collection of poll taxes belonging to the county shall be placed by the County Treasurer in the Indigent Sick Fund, and be applied to any future indebtedness on that fund."

This order is wrong in several particulars. The law positively requires two-thirds of the property tax to be placed in the General Fund. Two-thirds in this case would be one dollar on the hundred of taxable property.

The Commissioners, it is true, have done this after a fashion. But whilst they have placed that amount in the General Fund, they have incorporated in the order certain legislative provisions about the division and expenditure of the money in that fund, for which we find no authority in the law creating the Boards of County Commissioners. The Legislature has directed this money to be paid into a general fund. Being once so placed, it can only be applied to the payment of warrants drawn by the Auditor, in pursuance of law, on that particular fund. A law of the Territory of Nevada which remains in force under the State Constitution provides how warrants on the County Treasury shall be presented and registered, and that they shall be paid in the order of their presentation. (See Laws of 1861, p. 287.)

Whilst that law remains in force, the Commissioners cannot divide the General Fund so as to make forty per cent. only of that General Fund payable on warrants according to the date of their presentations, and the remaining sixty per cent. thereof payable on warrants of more recent date. Such an arrangement would doubtless be convenient for the county and enable the Commissioners to conduct county affairs much more economically. But positive law cannot be set aside even to promote a laudable desire to economize in county expenditures. So much of the order of the Commissioners as directs all the money arising from the collection of poll tax belonging to the

county to be placed in the Indigent Sick Fund, and applied only to the future indebtedness, is also wrong. Two-thirds of that fund belongs to the General Fund.

The law having provided that the Commissioners shall apportion one-sixth of the county revenue, *or as much thereof as may be necessary*, to the Indigent Sick Fund, and another sixth, *or so much thereof as may be necessary*, to a Contingent Fund, and no provision being made for what is to be done with the surplus, if either of these funds does not require the full amount of one-sixth of the county revenue, it becomes a question. of some doubt how that surplus should be disposed of. Suppose the Indigent Sick Fund requires only one-twelfth of the whole county revenue to meet all its present and probable liabilities for the current year, clearly in such case the Commissioners should only set apart one-twelfth of the revenue to such fund. The question then arises, what would become of the other twelfth? Will it all go into the General Fund? Will it go *pro rata* into the General Fund and Contingent Fund, or will it be discretionary with the Commissioners to place the entire one-twelfth in either of the other funds that may best subserve the interests of the county? There does not appear to be any very satisfactory solution of this question. If one-sixth of the county revenue is more than enough for the Indigent Sick Fund in this county, the Court, as at present advised, would not be disposed to control the discretion of the Board in disposing of the fraction not appropriated to that fund.

With regard to the ordinary revenue of the county, arising from the property tax, poll tax and sales of licenses, two-thirds thereof must be set apart for the General Fund. There can be no restraint on the Treasurer as to the manner of paying out that fund, except that imposed by law.

The judgment must be reversed, and the Court below will issue a mandamus in accordance with the views expressed in this opinion.